

# IN THE
# Court of Appeals of Indiana

J.M.,

*Appellant-Plaintiff*

v.

Catucky Derby, Inc.,

*Appellee-Defendant*

---

August 10, 2026

Court of Appeals Case No.
26A-CT-122

Appeal from the Harrison Circuit Court

The Honorable John T. Evans, Judge

Trial Court Cause No.
31C01-2509-CT-19

---

**Opinion by Chief Judge Tavitas**
Judges Bradford and Felix concur.


FILED
Aug 10 2026, 8:47 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**Tavitas, Chief Judge.**

## Case Summary

[1] J.M. appeals the trial court's dismissal of her amended complaint against Catucky Derby, Inc. ("Employer"). After J.M. alleged that she was raped by a fellow employee of Employer, J.M. filed an amended complaint against Employer and alleged claims of both direct negligence and vicarious liability. The trial court, however, dismissed J.M.'s amended complaint, and J.M. now appeals. Concluding that the trial court erred by dismissing J.M.'s amended complaint, we reverse and remand.[1]

## Issues

[2] J.M. raises two issues, which we restate as:

> I. Whether the trial court properly dismissed J.M.'s direct negligence claims.
>
> II. Whether the trial court properly dismissed J.M.'s vicarious liability claim.

## Facts

[3] J.M. filed a complaint against Employer on September 15, 2025, which she amended the following day. In the amended complaint, J.M. alleged the following: Employer is a "contracted service provider for FedEx Ground

---

[1] We held oral argument in this matter on July 21, 2026. We thank counsel for their presentations.

providing delivery services for FedEx." Appellant's App. Vol. II p. 7. Employer is owned by Jonathan Cupp ("Kirk"). Kirk's brother, Chad Cupp ("Chad Cupp" or "Cupp"), was "an employee, representative, and/or agent" of Employer. *Id.* Beginning on September 1, 2023, J.M. was employed by Employer. J.M. was sent to St. Louis, Missouri, to serve "on a contingency team to take over delivery routes as needed." *Id.* at 8.

[4] "While there, [J.M.] was staying in a property setup by, owned by, rented by, managed by, controlled by, and/or supervised by" Employer. *Id.* Chad Cupp was also assigned to St. Louis for his employment with Employer.

> On or about September 17, 2023, while [J.M.] and Chad Cupp were in St. Louis, Missouri for their employment with [Employer], after spending an evening out with a group of co-workers of [Employer], Chad Cupp aggressively and forcefully sexually assaulted and raped [J.M.] in a property setup by, owned by, rented by, managed by, controlled by, and/or supervised by [Employer].

*Id.*

[5] J.M. alleged that Employer "deliberately and/or negligently cultivated and tolerated a workplace culture that normalized excessive drinking and emboldened inappropriate behavior among its employees leading to this sexual assault and rape." *Id.* Further, "Chad Cupp was in the course and scope of his employment with [Employer] at the time of the sexual assault and rape." *Id.* J.M. also alleged:

15) [Employer] is vicariously liable for the actions of Chad Cupp.

16) [Employer] owed [J.M.] a duty of reasonable care to provide for her safety and well-being and breached said duty.

17) [Employer] was negligent and said negligence caused severe and permanent injuries to [J.M.].

18) Further, Chad Cupp and [Employer's] actions constituted intentional and negligent infliction of emotional distress causing injuries to all Plaintiffs [sic].

19) [Employer] was negligent and breached its duty of reasonable care by, including, but not limited to:

    a. Failing to supervise Chad Cupp;

    b. Failing to protect [J.M.] from sexual, physical, emotional and psychological abuse;

    c. Failing to control and supervise their employee(s) and/or actual, implied or apparent agent(s), including, but not limited to, Chad Cupp;

    d. Failing to warn [J.M.], of Chad Cupp's dangerous propensities;

    e. Failing to protect [J.M.] from Chad Cupp;

    f. Failing to warn of a dangerous condition on the premises created by the presence of Chad Cupp;

g. Failing to monitor its employees;

h. Failing to put appropriate safeguards in place to prevent [J.M.] from being sexually assaulted and raped;

i. Failing to appropriately implement policies and protocols into effect;

j. Failing to provide appropriate resources and protections to its employee, [J.M.];

k. Negligently hiring and retaining Chad Cupp;

l. Failing to properly investigate allegations of sexual misconduct;

m. Failing to properly intervene when their agent/employee's sexual misconduct that [sic] was or should have been known; and

n. Otherwise failing to provide [J.M.] adequate care, maintenance, and treatment according to her individual needs.

20) [Employer] is vicariously liable for the negligence of Chad Cupp who was negligent by, including, but not limited to:

a. Sexually abusing [J.M.];

b. Physically abusing [J.M.];

c. Raping [J.M.];

> d. Emotionally abusing [J.M.]; and
>
> e. Psychologically abusing [J.M.].
>
> 21) Some of [Employer's] conduct was egregious and rose to the level of gross and willful negligence.

*Id.* at 9-10.

[6] On November 19, 2025, Employer filed a motion to dismiss J.M.'s amended complaint. Employer argued that it was entitled to dismissal of J.M.'s vicarious liability claim and J.M.'s negligent retention and supervision claims. In response, J.M. argued that her amended complaint also raised premises liability and negligent security claims, which Employer did not address in its motion to dismiss. Moreover, J.M. argued that Employer "places the Court in a position of being asked to make factual determinations outside the scope of the pleadings without any development of the record. As such, the request for dismissal is premature, and would be more proper at the summary judgment stage once discovery is completed and the record has been developed." *Id.* at 23.

[7] On December 16, 2025, the trial court granted Employer's motion to dismiss pursuant to Indiana Trial Rule 12(B)(6). J.M. now appeals.

# Discussion and Decision

## I. Standard of Review

J.M. appeals the trial court's dismissal of her amended complaint pursuant to Indiana Trial Rule 12(B)(6). "Appellate review of a ruling on a Trial Rule 12(B)(6) motion is de novo." *Safeco Ins. Co. of Ind. v. Blue Sky Innovation Grp.*, 230 N.E.3d 898, 901 (Ind. 2024). "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Id.* "Appellate courts do not test the sufficiency of the facts alleged regarding their adequacy to provide recovery but test the sufficiency of whether a legally actionable injury has occurred in a plaintiff's stated factual scenario." *Id.* at 902. "The appellate court accepts the alleged facts as true, drawing every reasonable inference in favor of the non-moving party."[2] *Id.* "An order to dismiss is affirmed when it is apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances." *Id.* (internal quotation omitted). Dismissal under Rule 12(B)(6) is "rarely appropriate." *WEOC, Inc. v. Niebauer*, 226 N.E.3d 771, 774 (Ind. 2024). This standard imposes a high burden on the moving party (here, Employer). *Kelly v. Sommer*, 255 N.E.3d 1156, 1160 (Ind. Ct. App. 2025).

---

[2] The parties' arguments raise "facts" that were not included in the amended complaint. We, however, cannot consider those "facts."

Further, Indiana adheres to the principles of notice pleading. *Shields v. Taylor*, 976 N.E.2d 1237, 1244 (Ind. Ct. App. 2012). Indiana Trial Rule 8(A) merely requires "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for the relief to which the pleader deems entitled." "Under Indiana's notice pleading system, a pleading need not adopt a specific legal theory of recovery to be adhered to throughout the case." *Shields*, 976 N.E.2d at 1244. "Notice pleading merely requires pleading the operative facts so as to place the defendant on notice as to the evidence to be presented at trial." *Id.* at 1245. "Therefore, under notice pleading the issue of whether a complaint sufficiently pleads a certain claim turns on whether the opposing party has been sufficiently notified concerning the claim so as to be able to prepare to meet it." *Id.* "A complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues." *Safron Cap. Corp. v. Elanco Animal Health Inc.*, 267 N.E.3d 463, 472-73 (Ind. Ct. App. 2025), *trans. denied*.

## II. Direct Negligence Claims

First, J.M. argues that the trial court erred by dismissing her direct negligence claims against Employer. In the amended complaint, J.M. raised numerous claims and, at oral argument, J.M. clarified that she was asserting claims of premises liability and negligent supervision, retention, hiring, and security.

In its motion to dismiss, Employer requested dismissal of J.M.'s claims of negligent supervision and retention. In her response to the motion to dismiss, J.M. noted that her amended complaint raised additional direct negligence

claims against Employer.  The trial court, however, dismissed all of J.M.'s direct negligence claims.  On appeal, J.M. argues that the trial court erred by dismissing claims that Employer did not even seek to dismiss.[3]  "[O]rdinarily, 'a trial court may not sua sponte dismiss an action unless the court lacks jurisdiction or is otherwise authorized by statute or the rules of procedure.'" *Dorsett v. Lubitz*, 213 N.E.3d 1058, 1062 (Ind. Ct. App. 2023) (quoting *Tracy v. Morell*, 948 N.E.2d 855, 862 (Ind. Ct. App. 2011)).  Neither exception is present here.  Accordingly, we agree that the trial court erred by dismissing J.M.'s premises liability and negligent security claims.

[12]   As for J.M.'s negligent supervision and retention claims, we also agree that the trial court erred by dismissing these claims.  "[T]o prevail on a claim of negligence the plaintiff must show: (1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).  "Absent a duty there can be no negligence or liability based upon the breach." *Id.*  "Whether a duty exists is a question of law for the court to decide." *Id.* at 386-87.  In negligence cases, even summary judgment is "rarely appropriate." *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004).  "This is because negligence

---

[3] On appeal, Employer argues that it sought dismissal of J.M.'s entire complaint, but its motion did not directly address the premises liability and negligent security claims.  Employer also argues that its duty argument applies to all of J.M.'s direct negligence claims.  We conclude, however, that Employer did not raise these arguments below.

cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Id.*

[13] This Court has held: "Negligent retention and supervision is a distinct tort from respondeat superior; it may impose liability on an employer when an employee 'steps beyond the recognized scope of his [or her] employment to commit a tortious injury upon a third party.'" *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. Ct. App. 2009) (quoting *Clark v. Aris, Inc.*, 890 N.E.2d 760, 765 (Ind. Ct. App. 2008), *trans. denied*). "Negligent retention and supervision is a species of negligence and has the following elements: 1) a duty of care owed by an employer to a third person; 2) breach of that duty; and 3) injury to the third person proximately caused by the employer's breach." *Id.*

[14] Employer argues that it did not have a duty to J.M., but our Courts have held that the "duty of an employer to a person harmed by the conduct of an employee" is as follows:[4]

> To determine whether an employer owed a duty of care to the plaintiff—i.e., "a person harmed by the conduct of an

---

[4] Employer argues that we should apply the three-part test found in *Webb v. Jarvis*, 575 N.E.2d 992, 994 (Ind. 1991), to determine whether a duty exists. Our Supreme Court, however, has held that "the three-part balancing test articulated in *Webb*, is a useful tool in determining whether a duty exists, but only in those instances where the element of duty has not already been declared or otherwise articulated." *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003). "For example, there is no need to apply *Webb* to determine what duty a business owner owes to its invitees." *Id.* The duty of an employer to a person harmed by the conduct of an employee has already been delineated, and we need not apply *Webb* here.

employee"—Indiana courts apply Section 317 of the Restatement (Second) of Torts. This section provides as follows:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>
>> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>>
>> (ii) is using a chattel of the master, and
>
> (b) the master
>
>> (i) knows or has reason to know that he has the ability to control his servant, and
>>
>> (ii) knows or should know of the necessity and opportunity for exercising such control.

*Gue v. Triple E Prop. Mgmt., LLC*, 276 N.E.3d 1277, 1286 (Ind. Ct. App. 2026) (quoting Restatement (Second) of Torts § 317) (internal citation omitted), *trans. denied*.

[15] Relying upon summary judgment cases rather than motion to dismiss cases, Employer argues that it did not have a duty to J.M.. J.M., however, argues that

Employer owed her a duty; her amended complaint satisfied the notice pleading standard; and dismissal was improper. J.M. alleged that Cupp raped her "in a property setup by, owned by, rented by, managed by, controlled by, and/or supervised by [Employer]"; that Employer knew or should have known of Cupp's propensities; and that Employer should have warned J.M. of Cupp's dangerous propensities. Appellant's App. Vol. II p. 8. Here, these allegations are sufficient to establish a duty under the Restatement (Second) of Torts § 317 and "put a reasonable person on notice as to why a plaintiff sues." *Safron Cap. Corp.*, 267 N.E.3d at 472-73. Accordingly, we conclude that the trial court erred by dismissing J.M.'s direct negligence claims.

### III. Vicarious Liability Claim

[16] Next, J.M. argues that the trial court erred by dismissing her vicarious liability claim. "Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee acting within the scope of his employment." *Gue*, 276 N.E.3d at 1287 (citing *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008)). "Whether an act falls within the scope of employment is generally a question of fact." *Id.* (quoting *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 460 (Ind. 2018)). In general, the scope of employment is "ill-suited for resolution at this early stage of the lawsuit." *Kelly*, 255 N.E.3d at 1162.

[17] "A court may resolve a scope-of-employment issue as a matter of law only 'when the relevant facts are undisputed and would not allow a jury to find that the tortious acts were within the scope of employment[.]'" *Gue*, 276 N.E.3d at 1287 (quoting *Cox*, 107 N.E.3d at 460).

> An injurious act was within the scope of employment if it (1) was incidental to the conduct authorized; or (2) to an appreciable extent, further[ed] the employer's business. An act is incidental to an employee's job duties if it originated in activities closely associated with the employee's job. In deciding whether an employee's wrongful act was incidental to job duties or originated in activities closely associated with the job, a factfinder may consider (1) whether the wrongful act was of the same general nature as [the] authorized job duties; (2) whether the wrongful act [was] intermingled with authorized job duties; and (3) whether the employment provided the opportunity or the means by which to commit the wrongful act.

*Id.* (internal citations and quotations omitted). "Courts consider various factors, including the employee's purpose and authorized duties, and the employer's policies and degree of control." *Kelly*, 255 N.E.3d at 1163 (citing *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000); *Stropes ex rel. Taylor v. Heritage House Child.'s Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989)).

[18] "[T]he scope of employment—which determines whether the employer is liable—may include acts that the employer expressly forbids; that violate the employer's rules, orders, or instructions; that the employee commits for self-gratification or self-benefit; that breach a sacred professional duty; or that are egregious, malicious, or criminal." *Cox*, 107 N.E.3d at 461. The scope of employment encompasses "activities that the employer delegates to employees or authorizes employees to do, plus employees' acts that naturally or predictably arise from those activities." *Id.* "When tortious acts are so closely associated with the employment that they arise naturally or predictably from

the activities an employee was hired or authorized to do, they are within the scope of employment, making the employer liable." *Id.* at 462.

[19] J.M. emphasizes that even criminal acts may fall within the scope of employment and that after-hours activities during work travel may be within the scope of employment. J.M. argues that the circumstances here are unique due to the Employer-provided housing, the sibling relationship between Cupp and the owner of Employer, the workplace culture, and the work travel situation. According to J.M., the scope of employment must be developed during discovery, and this matter is more appropriate for summary judgment proceedings than dismissal under Trial Rule 12(B)(6).

[20] Employer contends that the assault occurred during a night out with co-workers, and no allegations in the amended complaint demonstrate that Cupp was acting within the scope of his employment. Relying upon *Trail v. Boys & Girls Clubs of Northwest Indiana*, 845 N.E.2d 130, 136 (Ind. 2006), Employer argues that J.M. failed to "set out the operative facts of the claim" showing the assault occurred within the scope of Cupp's employment.

[21] Our Supreme Court, however, has emphasized that "[w]hether an act falls within the scope of employment is generally a question of fact." *Cox*, 107 N.E.3d at 460. A scope of employment determination is "ill-suited for resolution" by a motion to dismiss. *Kelly*, 255 N.E.3d at 1162. At this stage of the proceedings, the record does not indicate, for example, Cupp's authorized job duties or Employer's policies and degree of control. These are facts in

Employer's knowledge and control, and discovery is necessary. As such, we agree with J.M. that the scope of employment determination is a question of fact ill-suited for dismissal.

[22] As with the direct negligence claims, J.M. included sufficient facts in her amended complaint to "put a reasonable person on notice as to why a plaintiff sues." *Safron Cap. Corp.*, 267 N.E.3d at 472-73. Under these circumstances, we conclude that the trial court erred by dismissing J.M.'s vicarious liability claim.

## Conclusion

[23] The trial court erred by dismissing J.M.'s amended complaint. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

[24] Reversed and remanded.

Bradford, J., and Felix, J., concur.

ATTORNEYS FOR APPELLANT

Brandon E. Tate
Katherine A. Piscione
Waldron Tate Land LLC
Indianapolis, Indiana

Amy M. Davis
Law Office of Amy M. Davis, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Kristen E. Mueller
Daniel Polsby
Clausen Miller, P.C.

Chicago, IL

Paige M. Neel
Clausen Miller, P.C.
Michigan City, Indiana